IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEGAVAIL, INC., an Oregon corporation,
PABLO SAFRONCHIK, TOM LINSTROM,
PAUL HAUER, and NEAL SCHNOG,

                                              Civil No. 05-1374-AS

                    Plaintiffs,        FINDINGS AND RECOMMENDATION

        v.

ILLINOIS UNION INSURANCE, CO., an
Illinois corporation,

                    Defendant.
_____

ASHMANSKAS, Magistrate Judge:

    Six shareholders of plaintiff MegAvail, Inc. (MegAvail),

sued MegAvail and some of its current directors.  Two of those

six shareholders, Peter Crim and Rodger Barkus, were prior

directors and officers of MegAvail.  MegAvail tendered defense of

the lawsuit to its insurance company, Illinois Union Insurance

1 - FINDINGS AND RECOMMENDATION                              [LB]

Company (IUI).  IUI declined to defend the action, relying upon an "Insured v. Insured" exclusion in the insurance policy. MegAvail filed this action against IUI for breach of insurance contract and indemnity seeking to recover its defense costs and for indemnity coverage.

On October 26, 2006, this court entered summary judgment for MegAvail on the question of whether IUI had a duty to defend MegAvail in the underlying shareholder action.  The parties were ordered to proceed with discovery and litigation of the remaining issues of allocation, IUI's duty to indemnify and damages. MegAvail has now filed a Motion for Partial Summary Judgment on the issue of damages for IUI's breach of its duty to defend MegAvail in the underlying shareholders' lawsuit - *Peter L. Crim, et al. v. Beavercreek Cooperative Telephone, et al., Multnomah County Circuit Court Case No. 0506-060606* - and MegAvail's request for attorneys' fees, pursuant to Or. Rev. Stat. § 742.061.  Oral argument was heard and for the reasons that follow, MegAvail's motion should be granted in part and denied in part.

## STATEMENT OF FACTS

MegAvail and its directors and officers are Insureds under Director & Officer and Company Liability Insurance Policy No. BMI20019787 (Policy) issued by IUI.  The Policy was issued on a claims-made basis with a policy period of January 29, 2005, to

January 29, 2006. The Policy's limit of liability is $1,000,000.
The relevant parts of the Policy, and associated definitions, are
included in the record.

MegAvail alleges that it purchased the Policy from IUI to
protect against the risk of MegAvail incurring legal fees that it
would be unable to pay and also to indemnify MegAvail in the
event a judgment was entered against it.  According to MegAvail,
this risk was specifically contemplated by MegAvail's President,
Pablo Safronchik, at the time MegAvail purchased the Policy from
IUI.

On June 3, 2005, six shareholders of MegAvail filed a
lawsuit in Multnomah County Circuit Court, Case No. 0506-06060,
against MegAvail, its officers, directors, and other shareholders
(Underlying Lawsuit).  The complaint included direct and
derivative claims alleging breach of fiduciary duty, usurpation
of corporate opportunities and racketeering.  MegAvail tendered
defense of the Underlying Lawsuit to IUI on or about June 8,
2005.  IUI denied coverage to MegAvail, its officers, and
directors on June 30, 2005.

As stated above, the court previously determined that IUI
breached its duty to defend plaintiffs in the Underlying Lawsuit
and ordered that "The parties shall conduct discovery and
litigate the remaining issues of allocation, Illinois Union's

duty to indemnify, and damages." MegAvail Inc. v. Illinois Union Ins. Co., 2006 WL 3063487 *3 (D.Or. October 26, 2006).

MegAvail alleges that due to IUI's breach of its duty to defend, they were forced to hire lawyers to defend the Underlying Lawsuit. Each of the plaintiffs hired separate counsel due to the nature of the claims and potential conflicts.

Under MegAvail's Articles of Incorporation, the company was obligated to indemnify its officers and directors for the attorney fees and costs they incurred. All of the officers and directors requested indemnification. The obligation to indemnify is qualified by Oregon decisional and statutory law.

From the outset of the litigation, the attorney fees were more than MegAvail could pay in the ordinary course of its business. When the Underlying Lawsuit was filed, MegAvail had approximately $75,000 in cash. By the time the case settled, MegAvail had spent all of that cash and also had to borrow $150,000 to pay legal fees and costs incurred in defending the lawsuit. As of April 30, 2007, MegAvail has paid $19,647.16 in interest on money it borrowed to fund the litigation.

During the few months that the lawsuit was pending, MegAvail's Safronchik made the determination, with the advice of counsel and MegAvail's board members, that MegAvail could not afford to continue to fund the litigation. MegAvail determined that if it was not able to resolve the case quickly, the company

would go bankrupt.  This financial pressure was caused by IUI's failure to pay defense costs.

Rather than incur additional defense costs, MegAvail made a business decision to mitigate the damages caused by IUI's breach and settle the Underlying Lawsuit.  According to MegAvail, plaintiffs settled the Underlying Lawsuit on or about December 2005.  The settlement agreement required MegAvail to make two settlement payments totaling $250,000.  MegAvail made those payments by US Bank checks dated December 21, 2005, and April 14, 2006.  Peter Crim and Roger Barkus were plaintiffs in the Underlying Action and "Insureds" under the policy.  Crim and Barkus received settlement funds from the settlement.

The total amount of legal fees incurred by all of the plaintiffs in defense of the Underlying Lawsuit, for which MegAvail is responsible, is $123,323.97.  The claims made against the plaintiffs in the Underlying Lawsuit were essentially the same and the same defense and legal work was required whether the claims were asserted by one plaintiff, all of them, or any combination.

MegAvail asserts that, in addition to the fees set forth above, MegAvail officers and/or directors Safronchik, Paul Hauer and Tom Linstrom provided services necessary for the defense of the Underlying Lawsuit.  According to MegAvail, these were services that would ordinarily have been provided by the law

firms had MegAvail been able to afford to pay for them.  The total amount allocated for those services is $35,217.06 and was a direct result of IUI not paying defense costs.  IUI contends that these fees are not compensable under the terms of the Policy.

MegAvail maintains that the total amount of damages as of April 30, 2007, caused by IUI's failure to defend plaintiffs in the Underlying Lawsuit is $408,541.03.  IUI disputes this amount on the grounds that MegAvail has combined defense costs with claims for indemnification for damages which are separate obligations.  According to IUI, MegAvail did not sustain a loss when the $250,000 was paid by Telsystems.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)).  Summary judgment is not proper if material factual issues exist for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party

must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## DISCUSSION

By its motion, MegAvail seeks the damages, excluding the value of the assignment of patent rights, caused by IUI's breach of its duty to defend the Underlying Lawsuit, including the "in-house" costs of the defense and the cash payment it made to resolve the Underlying Lawsuit. Alternatively, MegAvail contends that if the in-house defense damages and settlement amount are not recoverable as a result of the breach of the duty to defend, those amounts are recoverable under IUI's duty to indemnify, which MegAvail asserts was also breached in this case. MegAvail requests defense costs ($158,541.03), the settlement payment in the Underlying Lawsuit ($250,000) and interest on the money it borrowed ($19,647.16) totaling $428,188.19. Finally, MegAvail also seeks a determination that it is entitled to attorney fees and costs, pursuant to section 742.061, in an amount to be determined at the conclusion of this case.

## I.    Attorney Fees

MegAvail requests an entry of judgment on its request for $123,323.97[1] in reasonable and necessary legal fees in defense of the Underlying Lawsuit.  MegAvail reached this amount by multiplying the hours worked by all of the attorneys who worked on the Underlying Lawsuit by their respective hourly rate, as follows:[2]

---

[1]    The fees are broken down as follows:

a. Plaintiff Pablo Safronchik was represented by attorney Michael R. Seidl.  Mr. Safronchik incurred a total of $16,048 in legal fees in defense of the Underlying Lawsuit.

b. Plaintiff Neal Schnog was represented by attorney Gina Anne Johnnie.  Mr. Schnog incurred a total of $4,891.98 in legal fees in defense of the Underlying Lawsuit. The full amount of Ms. Johnnie's bill is $6,631; $1,739.02 is attributable to claims independent of Mr. Schnog's position as a director and officer of MegAvail, therefore, this amount is not claimed as damages.

c. Plaintiffs Tom Linstrom and Paul Hauer were represented by attorney Richard A. Finnigan. Mr. Linstrom incurred a total of $7,854 in legal fees in defense of the Underlying Lawsuit; Mr. Hauer incurred $7,634. The full amount of Mr. Finnigan's bill is $15,488, however MegAvail was required to pay only $8,482.49 of this amount; the balance is not claimed.

d. MegAvail was represented by Black Helterline LLP. MegAvail incurred a total of $91,201.50 in legal fees in defense of the Underlying Lawsuit.

e. MegAvail's share of the mediation fee was $2,700.

[2]    Because IUI does not challenge either the rate or number of hours worked by law clerks, paralegals or

| Attorney/Years Practice | Hours Sought | Rate/Hour | Total |
|---|---|---|---|
| Michael Merchant/19 | 126.30<br>1.10 | $250<br>$265 | $31,575<br>$    291.50 |
| John McGuigan/28 | 134.65<br>2.65 | $280<br>$290 | $37,702<br>$    768.50 |
| David Roy/31 | 4.90 | $280 | $  1,372 |
| Brooke Willcox-Jones/5 | .20 | $180 | $      36 |
| Nathan Gerhardt/4 | 59.40 | $175 | $  8,470 |
| Margaret Schroeder/7 | 14.10 | $160 | $  2,256 |
| Michael Seidl/24 | 60.20 | $265 | $15,953 |
| Richard Finnigan/32 | 70.40 | $220 | $15,488 |
| Gina Anne Johnnie/18 | 30.95 | $190 | $ 5,881 |
| Michelle Morrow/2 | 3.00 | $135 | $    405 |

According to MegAvail, the attorneys' fees set forth above were "reasonably and necessarily incurred and caused by [IUI's] breach."

In response, IUI challenges MegAvail's request for attorneys' fees on the ground that the amounts sought were not reasonable and necessary. Specifically, IUI contends the hourly rates sought are inconsistent with the Oregon State Bar's Economic Survey; some of the attorney charges were unrelated to the litigation; and some of the services related to affirmative claims and not defense of the Underlying Lawsuit. Finally, IUI maintains that MegAvail's attorneys' billings include block

---

legal assistants, those fees are not included in the analysis here. MegAvail's request for those fees is granted as unopposed.

billing, which prevents the parties from determining the
reasonableness of the billings.

The calculation of a reasonable fee award usually involves
two steps.  First, the court must calculate the "lodestar figure"
by taking the number of hours reasonably expended on the
litigation and multiplying it by a reasonable hourly rate.
<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Fischer v. SJB-
P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000).  The party
seeking an award of fees must submit evidence supporting the
hours worked and the rates claimed.  <u>Hensley</u>, 461 U.S. at 433.

A.  <u>Hours Reasonably Expended</u>

As set forth above, IUI challenges the requested hours on
the ground that some of the attorney charges were unrelated to
the litigation.  Specifically, IUI disputes some of the
professional services provided by attorney McGuigan because they
relate to the business affairs of MegAvail and not the Underlying
Lawsuit.  IUI fails, however, to direct the court to any evidence
in the record in support this allegation.

In contrast, MegAvail submitted a declaration from attorney
McGuigan in which he testified that "[a]ll of my time entries on
the attached Exhibit 1 are related solely to the defense and
settlement of the Underlying Litigation; none relates to the
business affairs of MegAvail."  The court has reviewed attorney
McGuigan's invoice for client MegAvail and his declarations in

support of the hours expended.  The court is satisfied that the hours claimed by attorney McGuigan were reasonably expended on the Underlying Lawsuit.

IUI also challenges the number of hours reasonably expended on the ground that some of the hours billed related to affirmative claims and not defense of the Underlying Lawsuit. IUI provides no additional argument or citation to the record in support of this challenge.  The court is left to puzzle which attorney, how many hours and what work is challenged.  Indeed, IUI has not provided the court with any specific request for reduction.  Further, this court has no first hand knowledge of the litigation at issue as none of the proceedings for the Underlying Lawsuit occurred before this court.  Under the circumstances the court declines to reduce the hours expended on the ground that some of the hours billed related to affirmative claims and not defense of the Underlying Lawsuit.

Finally, IUI maintains generally and without citation to the record that MegAvail's attorneys' billings include block billing, which prevents the parties from determining the reasonableness of the billings.  IUI is correct that the district court has authority to reduce hours that are billed in block format.  The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.  See, e.g., Gates v. Deukmejian,

987 F.2d 1392, 1397 (9th Cir. 1992).  Without question, block billing makes it more difficult to determine how much time was spent on particular activities.  <u>See</u>, <u>e.g.</u>, <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 971 (D.C.Cir. 2004)(reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); <u>see also Hensley</u>, 461 U.S. at 437(holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); <u>Fischer</u>, 214 F.3d at 1121 (holding that a district court may reduce hours to offset "poorly documented" billing).

In response to IUI's block-billing challenge, MegAvail warrants to the court that to the extent Black Helterline's bill included block entries, the work was all defense related.  In support, MegAvail submitted a revised billing segregating times for the individual tasks and attorney declarations explaining the revisions and corroborating that the purpose of the hours was in defense of the Underlying Lawsuit.  IUI did not challenge these revised submissions via additional briefing or at oral argument. The court finds the billing invoices submitted by Black Helterline are adequate to evaluate the reasonableness of the charges and, accordingly, no reduction in hours is required.

B.    Reasonable Hourly Rates

A reasonable hourly rate can be determined by looking at the prevailing rate in the relevant community, in this case, Portland, Oregon.  See Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir. 1997).  The best evidence of the prevailing rate in Portland, Oregon, is the 2002 Economic Survey (Economic Survey) conducted by the Oregon State Bar.  Roberts v. Interstate Distributor Co., 242 F.Supp.2d 850, 857 (D.Or. 2002); see also Message from the Court Regarding Attorney Fee Petitions, available at: http:// www.ord.uscourts.gov.

IUI makes a broad and general objection to the hourly rates sought for "the underlying attorneys."  According to IUI, the billings provided by those attorneys show that they charge an hourly rate in excess of the Economic Survey.  IUI maintains that "[t]his is particularly true when the rate is measured against the type of work."  IUI sets forth no other argument or evidence in support of its position.  Further, it appears that IUI objects to the hourly rates sought for all ten of plaintiffs' attorneys without additional explanation.

In support of the requested rates, MegAvail submitted declarations from the attorneys specifically addressing the Survey relied upon by IUI.  In the declarations, MegAvail sets forth the years of experience for each attorney, the rate sought by the attorney and the range of hourly rates based on the number

of years of experience set forth in the Economic Survey.  Indeed,

none of the hourly rates for fees sought exceeds the rates listed

in the Economic Survey for attorneys with similar years of

experience.  For example, attorney Michael Merchant provided the

following uncontested evidence:

> 7.    Black Helterline LLP's rates are within the reasonable
>        range of hours for Portland attorneys with similar
>        experience as set forth in the Oregon State Bar 2002
>        Economic Survey. . . .  I have been practicing civil
>        litigation in Portland, Oregon for 19 years.  Mr.
>        McGuigan and Mr. Roy have been practicing business law
>        in Portland, Oregon for 28 and 31 years, respectively.
>        Mr. Gerhardt is a business law associate with 4 years
>        of experience, and Ms. Wilcox-Jones and Ms. Schroeder
>        are litigation associates with 5 and 7 respective years
>        of experience.  The rate of compensation for attorneys
>        in private practice range (as of 2002) from $183 to
>        $337 for over 30 years of experience, $180 to $320 for
>        21-30 years, $175 to $298 for 16-20 years, $150 to $225
>        for 7 to 9 years, and $145 to $221 for 4-6 years

After considering the time and labor expended by the

attorneys in the Underlying Lawsuit, the preclusion of other

employment due to the acceptance of that case, the time

constraints, the customary fee, and the experience and reputation

of each attorney the court finds that the per hour rate requested

represents a reasonable hourly rate.  The rates charged by the

various attorneys, all Portland practitioners, range between the

25th and 75th percentiles of their Portland counterparts with

corresponding years of experience.

The court is satisfied that both the number of hours

expended on litigation of the Underlying Lawsuit and the hourly

rate for those hours is reasonable.  As such, the court
recommends granting summary judgment for MegAvail on their
request for $123,323.97 in reasonable and necessary legal fees in
defense of the Underlying Lawsuit.

**II.  In-House Costs**

     In addition to attorneys' fees, MegAvail seeks additional
in-house defense costs in the amount of $35,217.06 for services
provided by its directors Linstrom, Hauer and Safronchik that
were incurred in defense of the Underlying Lawsuit.  According to
MegAvail, the extra costs were caused solely by IUI's breach of
its duty to defend.  MegAvail relies on a recent decision from
the Oregon Court of Appeals, Employers Ins. of Wausau v.
Tektronix, Inc., 211 Or.App. 485, 156 P.3d 105 (2007), for
authority to award these in-house costs to MegAvail as damages
under the Policy.

     In Wausau, the Oregon Court of Appeals considered, among
other things, whether the trial court erred when it held that
defendant's payment of its own employees' wages and benefits
constituted third party "damages" under a liability policy.  In
rejecting Wausau's assignment of error the court stated "Wausau
[the drafter] could have chosen to limit damages to costs
incurred by Tektronix as a result of payments to third parties.
It did not do so.  The trial court did not err in denying
Wausau's motion *in limine* to exclude evidence of salaries and

15 - FINDINGS AND RECOMMENDATION                            [LB]

benefits paid to Tektronix employees for remediation work." <u>Id</u>.
at 518.

In response, IUI insists that MegAvail is not entitled to
damages for employee expenses incurred in the Underlying Lawsuit.
According to IUI, the Policy clearly provides that payment of
employee wages and benefits and costs are not covered by the
Policy.  To award those damages would be allowing recovery beyond
what the contract provided had it been performed.  IUI
distinguishes the decision in <u>Wausau</u> on the ground that the
insurance policy in that case was silent on the issue of employee
wages and benefits and the definition of damages was ambiguous.
By contrast, the Policy here clearly provides that payment of
employee wages, benefits and costs are not covered and,
therefore, MegAvail is not entitled as a matter of law to recover
the $35,000 they seek as benefits.

Turning to the Policy, the Coverage Section provides:

**A.   INSURING CLAUSES**

    1.   Insurer shall pay on behalf of the Directors and
Officers Loss resulting from any Claim first made
against the Directors and Officers during the
Policy Period for a Wrongful Act.

    2.   Insurer shall pay on behalf of the Company Loss
which the company is required or permitted to pay
as indemnification to any of the Directors and
Officers resulting from any Claim first made
against the Directors and Officers during the
Policy Period for a Wrongful Act.

    3.   Insurer shall pay on behalf of the Company Loss
resulting from any Claim first made against the

Company during the Policy Period for a Wrongful Act.

**B.    DEFINITIONS**

The following terms whenever in this Coverage Section in boldface type, shall have the meaning indicated. Other terms, whenever used in this Coverage Section on boldface type, shall have the meanings indicated in Clause B of the General Terms and conditions section of this Policy.

. . . .

4.    Costs, Charges and Expenses mean reasonable and necessary legal fees and expenses incurred by any of the Insureds in defense, of any Claim and cost of attachment or similar bonds, but shall not include:

a)    salaries, wages, overhead or benefit expenses associated with officers or employees of the Company, or

. . . .

7.    Loss means damages, settlements and Costs, Charges and Expenses incurred by any of the Directors and Officers under Insuring Clauses 1. or 2., and the Company under Insuring Clause 3.. . . . .

MegAvail acknowledges the Policy exclusion for employee wages and benefits, but argues the analysis here must focus on the consequential damages that flowed from IUI's breach of its duty to defend.  According to MegAvail, once IUI failed to provide a defense in the Underlying Lawsuit, MegAvail was forced to act to mitigate the harm to the company, including settling the case to avoid incurring additional expenses and costs.  As such, the Policy exclusion for employee wages is not relevant

here because those wages are consequential damages that arose directly from IUI's breach.

"Consequential damages are, by definition, those that the parties to a contract reasonably contemplate *at the time of execution,* not at some later date." Northwest Pump & Equipment Co. v. American State Ins. Co., 144 Or.App. 222, 228, 925 P.2d 1241 (1996)(emphasis in original). As such, the question of whether it is reasonable to include as consequential damages costs in excess of the provisions of an insurance policy must be determined by reference to what was reasonably contemplated by the parties at the time of the execution of the policy. Id. at 228-229. Under Oregon law, the intentions of the parties are expressed in the terms of the insurance policy itself, which contains express limitations on coverage. Id. at 229. The Policy authorizes "reasonable and necessary legal fees and expenses incurred by any of the Insureds in defense, of any Claim and cost of attachment or similar bonds, but shall not include: a) salaries, wages, overhead or benefit expenses associated with officers or employees of the Company[.]" Thus, the Policy appears to expressly limit coverage to exclude the in-house costs sought here. Nevertheless, MegAvail may be entitled to the in-house costs as defense costs. Both parties rely upon the Oregon Court of Appeals decision in Northwest Pump, 144 Or.App. 222, 925 P.2d 1241. The Oregon court found that once defendant breached

its duty to defend it was liable for the costs of the defense.
Id. at 230, 925 P.2d 1241 ("Defendant breached its duty to
defend[] and . . . is liable for the costs of the defense.).

Safronchik provided testimony that the in-house costs were
defense costs MegAvail was forced to incur solely due to IUI's
breach of the duty to defend.  In his declaration Safronchik
stated:

> 12.  To avoid or reduce some of the legal fees and costs,
> MegAvail officers and/or directors Safronchik, Hauer
> and Linstrom provided services necessary for the
> defense of the underlying claim.  These were services
> that would ordinarily have been provided by the law
> firms had MegAvail been able to afford to pay for them.
> The total amount allocated for those services is
> $35,217.06 and was a direct result of Illinois Union
> not paying defense costs.

The evidence is uncontroverted that MegAvail was forced to incur
in-house costs by having its employees provide services it could
not afford a law firm to provide and that the services provided
were, in fact, services that would otherwise be provided by a law
firm.  Nevertheless, MegAvail failed to provide any evidence
regarding the precise nature, the rate and the hours sought for
the work of Linstrom, Hauer and Safronchik.  Rather, it simply
provided the court with a sum amount.  As in the case of attorney
fees, the request for these defense costs must be reasonable.
The court accepts Safronchik's conclusion that all in-house costs
were for "services that would ordinarily have been provide by the
law firms."  The court, however, is unable to determine the

reasonableness of the request on the present record.

Accordingly, MegAvail's request for entry of summary judgment for $35,217.06 in-house costs should be denied. MegAvail is granted leave to renew the request.

### C.    Settlement Costs

Next, MegAvail seeks the settlement costs from the Underlying Lawsuit because those costs were "reasonably contemplated" at the time the Policy was issued. Relying on the decision in Northwest Pump, 144 Or.App. 222, 925 P.2d 1241, MegAvail argues those costs are recoverable as consequential damages that resulted when IUI refused to defend the company and its officers and directors in the Underlying Lawsuit.

The decision in Northwest Pump is directly on point and contrary to MegAvail's position. See 144 Or.App. at 228-229, 925 P.2d 1241. As stated above, the parties' agreement, including limitations, is expressed by the Policy. Simply put:

> As to the settlement, however, defendant asserts that it is not liable, because the underlying event that gave rise to the claim is subject to an exclusion clause in the insurance policy. Defendant is entitled to assert the applicability of the exclusion provision. If the provision applies, it is not liable for the settlement costs. If not, then it will be liable for those settlement costs to the extent that they are reasonable.

Northwest Pump, 144 Or.App. at 230, 925 P.2d 1241.

Thus, the settlement costs are not recoverable as damages for breach of the duty to defend. Those amounts may only be recoverable under the indemnification terms of the Policy.

20 - FINDINGS AND RECOMMENDATION                                    [LB]

MegAvail maintains that the Policy clearly covers loss resulting from the Underlying Lawsuit.  As set forth above, the Policy definition of "Loss" includes damages, settlements, and reasonable and necessary legal fees and expenses incurred in their defense "resulting from any Claim first made against the Directors and Officers during the Policy Period for a Wrongful Act," "Loss which the Company is required or permitted to pay as indemnification to any of the Directors and Officers" and "Loss resulting from any Claim first made against the Company during the Policy Period for a Wrongful Act."  MegAvail incurred Loss for itself and paid for Loss incurred by its officers and directors as required under its Articles of Incorporation. "Claim" is defined by the Policy as "any written or oral demand for damages or other relief against any of the Insureds."  The Underlying Lawsuit constitutes a "Claim" under the Policy.  There is no dispute that the timing requirement and the requirement that the "Claim" be "first made against the Directors and Officers" and against the Company during the "Policy Period" were satisfied.  Finally, the claims made in the Underlying Lawsuit fall within the Policy's definition of "Wrongful Act."  "Wrongful Act" is defined in the Policy's Coverage Section as "any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by any of the Directors and Officers, while acting

in their capacity as a director, officer or employee of the Company or . . . the Company."

IUI insists that MegAvail is not entitled to summary judgment on the issue of indemnification for the $250,000 settlement costs. Specifically, MegAvail has not established as a matter of law that the Insured v. Insured exclusion[3] does not bar recovery of the damages sought other than the damages for breach of the duty to defend. According to IUI, the underlying claims were first brought by Mr. Crim, an insured. Crim contacted the attorneys and was lead plaintiff in the Underlying Lawsuit. As such, there are fact questions regarding whether the plaintiffs in the Underlying Lawsuit acted independently.

In an order of this court dated October 26, 2006, Judge Haggerty affirmed his earlier determination "that, under Oregon

---

[3]     The Policy states, in part:

    C.    EXCLUSIONS

    1.  Insurer shall not be liable to make any payment
    under this Coverage Section in connection with any
    Claim:

        . . . .

            (f) by, on behalf of, or at the direction of any
            of the Insureds,

                (I) except and to the extent such claim is
                brought derivatively by a security holder of
                the Company who, when such claim is first
                made, is acting independently of all of the
                Insureds.

law, the uninsured plaintiffs acted independently of the former
directors.  Therefore, as a matter of law, Illinois Union's duty
to defend plaintiffs in the Underlying Lawsuit was not excused by
the 'Insured v. Insured' exclusion, and Illinois Union was
obligated to defend plaintiffs in the Underlying Lawsuit." <u>See</u>
<u>MegAvail</u>, 2006 WL 3063487 *3; <u>see also</u> <u>MegAvail v. Illinois Union</u>
<u>Ins. Co.</u>, 2006 WL 2045862 (D.Or. July 19, 2006).  By those
earlier rulings, the issue of whether the uninsured plaintiffs
acted independently of the former directors was resolved as a
matter of law.  Therefore, the presence of those uninsured
plaintiffs in the Underlying Lawsuit both triggered IUI's duty to
defend and provided indemnification for at least some of the
settlement costs.

    In that same decision, Judge Haggerty expressly instructed
the parties to "litigate the remaining issue[] of allocation . .
. ."  2006 WL 3063487 *3.  Even MegAvail has conceded that under
the indemnification terms of the Policy "the amount allocated to
claims made by plaintiffs Peter Crim and Rodger Barkus" should be
deducted from the settlement amount because they "clearly fall
within Illinois Union's 'Insured vs. Insured' exclusion."
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
at 6-7 (February 28, 2006).

    The Policy provides the mechanism for allocation.
Specifically, the Policy provides, in relevant part:

J.    ALLOCATION
        In the event any of the Insureds in a Claim incur both
Loss that is covered by the Policy and also loss which is
not covered by this Policy, either because such Claim
includes both covered and uncovered matters or because such
Claim is made against both covered and uncovered parties,
then coverage will be allocated as follows:

    1.    100% of Costs, Charges and Expenses Incurred by
        such Insureds on account of such Claim will be
        allowed as covered Loss, and

    2.    any remaining loss incurred by such Insureds on
        account of such Claim will be allocated by the
        parties between covered Loss and uncovered loss
        using all reasonable efforts based upon the legal
        liabilities of each of the parties to such
        matters.

Further, IUI presented evidence of allocation amounts from

the deposition testimony of Crim:

Q.    Okay.  And so whatever was left over, that's where the
    formula was applied based upon the shareholders'
    interest as of the date of settlement; is that correct?

A.    That's correct.

Q.    Do you, as you sit here today, have an estimate of the
    percentages that each plaintiff – that was applied to
    each plaintiff's share of the settlement proceeds?

A.    The numbers would be very rough estimates.

Q.    Okay.  If you can give me rough estimates, I would
    appreciate it.

A.    I would say that I got around 45 percent, Barkus got
    around 20 percent, and the remaining 35 percent was
    relatively equally divided.

Q.    And would the 35 percent be equally divided – strike
    that.  Would the 35 percent include a portion going to
    Digital Event Sequencing?

A.    No.

Q.    Okay.  The 35 percent would go to Mr. Heil, Mr.
      Babcock, and Ms. Crim?

A.    And one more.

Q.    Oh, and Mr. Valentine?

A.    Mr. Valentine had joined the --

Q.    So --

A.    To be more accurate, Mrs. Crim, Mr. Babcock, and Mr.
      Heil were relatively equal.  Valentine was probably at
      1 percent or something.  Much smaller.

MegAvail has failed to establish as a matter of law that it
is entitled to an entry of judgment for $250,000 in settlement
costs against IUI.  Under Oregon law, IUI is not required to pay
settlement costs that are not otherwise covered by the Policy as
damages for breach of its duty to defend.  Under the terms of the
Policy, amounts received by Crim and Barkus were excluded from
coverage and an allocation must be determined.  IUI has presented
some evidence of allocation and the parties should be permitted
to present additional evidence of allocation for the jury's
consideration.  Accordingly, MegAvail's request for entry of
judgment in the amount of $250,000 for settlement costs should be
denied.

Finally, IUI contends that MegAvail is not entitled to
recover the settlement amount, $250,000, because it did not
sustain a compensable loss.  The parties to the settlement of the
Underlying Lawsuit received $250,000 in exchange for giving up
their ownership interest in MegAvail and Randax, the entity

claiming rights to the intellectual property.  The monetary component of the settlement was financed by a third party, Telsystems West, who received the shares and ownership interest that were given up as part of the settlement.  According to IUI, in order to fund the settlement, MegAvail did not have to part with any of its own cash and it did not have to issue or sell any new shares in order to perform.  Simply put, MegAvail suffered no loss as a result of the settlement.

In support of this contention, IUI offered the following deposition testimony of Safronchik:

Q.  Did Telsystems West provide the full $250,000?

A.  Yes, sir.

Q.  How many shares did Telsystems West receive for the $250,000.

A.  I do not have the precise number.

Q.  Do you have a spread sheet that would reflect that, or some sort of documents that would show that?

A.  Certainly.

Q.  Was it a written agreement between Telsystems West and MegAvail for the sale of shares?

A.  There was a document that Black Helterline prepared that was made available to all current shareholders to see if any of them would be willing to participate.

Q.  Do you have an estimate of how many shares Telsystems West received for the payment of $250,000?

A.  It's there.

Q.  Oh, its in a document?

A.    No.  It's the precise amount.  The same number of
      shares.

. . . .

Q.    Oh. The 1063?

A.    Yes, sir.

Q.    Sorry, I don't mean to be obtuse.

A.    I thought you were aware.

Q.    If I did the math, it would be $250,000 divided by 1063
      cents, would give us the number of shares they
      received?

A.    Yes.  I can do the --

Q.    You don't need to do it.  I just need to know how you
      do it.

A.    The same precise quantity of shares that the plaintiffs
      gave back to MegAvail were subsequently reissued to
      raise the funds to make the payment.

Q.    And that was to Telsystems West?

A.    Correct.

Q.    Did Telsystems West receive any additional interest in
      Randax as part of the payment – as part of paying
      $250,000 for the settlement?

A.    Yes, sir.

Q.    What sort of interest did it receive in Randax for
      that?

A.    Once again, the same amount that --

. . . .

      THE WITNESS:  The same amount that the plaintiffs
      provided to MegAvail.

. . . .

> Q.  Is it as simple as everything that was tendered by the plaintiffs as part of the settlement agreement then went to Telsystems West in payment of the $250,000?
>
> A.  Yes, sir.

IUI contends that MegAvail bought and sold the shares for the same amount and, therefore, suffered no compensable loss because it was in the same financial position after the buy/sell of shares.  MegAvail disputes this characterization and argues it "incurred significant loss to settle the case.  MegAvail responds that the settlement agreement reached in the Underlying Lawsuit required it to make two settlement payments totaling $250,000. MegAvail raised the money for the settlement amount by selling its own stock.  Further MegAvail was forced to sell the shares at a value far higher, $0.1063, than their actual value, $0.0217.

On the record before it, the court is unable to determine as a matter of law that MegAvail incurred a compensable loss of $250,000 when it settled the Underlying Lawsuit.  IUI has presented some evidence that MegAvail bought shares from the plaintiffs in the Underlying Lawsuit and sold those share to Telsystems with no net loss to MegAvail, only a transfer of ownership.  Even if MegAvail was forced to assign an inflated value to the shares, the shares had some value, *i.e.*, $0.217.  On the evidence before it, the court is unable to determine the amount of MegAvail's money that was used to pay the settlement and whether the payment was actually a compensable loss to

MegAvail.  MegAvail has failed to establish as a matter of law that it incurred a $250,000 compensable loss when it bought and sold its own shares to pay the plaintiffs in the Underlying Lawsuit.  Accordingly, MegAvail's request for judgment on the settlement costs should be denied.

### D.  Costs in this Case

Finally, MegAvail maintains it is entitled to attorneys' fees and costs in this case pursuant to Or. Rev. Stat. § 742.061. Section 742.061 provides for the recovery of attorneys fees "if settlement is not made within six months rom the date proof of loss is filed with an insurer" and "the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action."  IUI appears to concede that section 742.061 applies in this instance.  Thus, judgment in favor of MegAvail should be granted on the question of whether it is entitled to attorneys' fees and costs in this case under section 742.061.  Nevertheless, MegAvail's request for fees and costs at the close of this case must be reasonable, *i.e.*, hours reasonably expended at a reasonable rate, and IUI has leave to challenge the amounts requested.

**CONCLUSION**

Based on the foregoing, MegAvail's Motion for Partial Summary Judgment (doc. #58) should be GRANTED, in part, and DENIED, in part as follows:  MegAvail's request for attorney fees in the amount of $123,323.97 should be granted; MegAvail's request for in-house costs in the amount of $35,217.06 should be denied with leave to renew; MegAvail's request for settlement costs in the amount of $250,000 should be denied; and MegAvail's request for attorney fees and costs in this case pursuant to Or. Rev. Stat. 742.061 should be granted with IUI granted leave to challenge the amounts requested.

DATED this 21 day of September, 2007.

　　　　　　　　　　　 /s/ Donald C. Ashmanskas
　　　　　　　　　　　 Donald C. Ashmanskas
　　　　　　　　　　 United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due October 5, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

30 - FINDINGS AND RECOMMENDATION　　　　　　　　　　　　　　[LB]